

FILED
8/11/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT
JG

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 21 CR 105 |
| v. | Judge John Z. Lee |
| DENZAL STEWART | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant DENZAL STEWART, and his attorney, ANTHONY W. HILL, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding information in this case charges defendant with conspiracy to commit arson, in violation of Title 18, United States Code, Section 371 (Count One) and civil disorder, in violation of Title 18, United States Code, Section 231(a)(3) (Count Two).

3. Defendant has read the charges against him contained in the superseding information, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding information: Count One, which charges defendant with conspiracy to commit arson, in violation of Title 18, United States Code, Section 371; and Count Two, which charges defendant with civil disorder, in violation of Title 18, United States Code, Section 231(a)(3).

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in Counts One and Two of the superseding information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

On or about May 30, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, DENZAL STEWART did conspire with Lamar Taylor and others known and unknown, to maliciously damage and destroy and attempt to damage and destroy, by means of fire, a Chicago Transit Authority vehicle, which was in whole and in part owned and possessed by, and leased to, an institution and organization receiving Federal financial assistance, in violation of Title 18, United States Code, Sections 844 (f)(1) and 2.

Additionally, on or about May 30, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, DENZAL STEWART and Lamar Taylor, did knowingly and intentionally commit an act to obstruct, impede, and interfere with a fireman and law enforcement officer lawfully engaged in the lawful performance of his official duties

incident to and during the commission of a civil disorder which obstructed, delayed, and adversely affected commerce and the movement of an article and commodity in commerce, in violation of Title 18, United States Code, Section 231(a)(3).

More specifically, on or about May 30, 2020, STEWART and Taylor traveled to downtown Chicago by car with another individual. They brought with them facemasks, gloves, and a lighter. While traveling to Chicago, Taylor posted a video to Facebook Live that included STEWART. Throughout the video, STEWART detailed that he wanted to loot "a jewelry store" or "anything" that was open.

Later in the day, in downtown Chicago, STEWART used a lighter to set fire to papers and cardboard in the back of a CTA van parked across from Pritzker Park, then ran away. After the fire went out without causing any damage, STEWART went back to the rear of the CTA van and used the lighter to set the cardboard and paper on fire again and to attempt to set fire to a yellow blanket or tarp that was inside the van. After pulling the yellow blanket or tarp over the top of the lit cardboard and paper, STEWART left the back of the van.

A short time later, STEWART, now with Taylor, returned to the van and approached the driver's door of the CTA van. Taylor got inside the van while STEWART was standing outside the door. With STEWART watching, Taylor used a lighter to attempt to light the CTA van on fire. Taylor then exited the van and closed all of the doors of the van before he and STEWART left the CTA van.

A short while later, STEWART went back over to the CTA van and briefly leaned into it through the driver's door. STEWART briefly left the van as a Chicago

Police Department vehicle passed by. A few seconds later, STEWART returned to the CTA van, picked up a cardboard box from the street, placed it into the CTA van through the front driver's side door, and shut the door. Approximately thirty seconds later, smoke started to appear from the CTA van. As the smoke was coming from the van, STEWART reapproached the van and threw accelerant into the CTA van. The CTA vehicle became engulfed in flames that required the response of the Chicago Police Department and services of the Chicago Fire Department to extinguish.

When the Chicago Fire Department arrived on the scene, STEWART took a video of the CTA van burning yelling "Torch that [expletive]," "There it go, first spark," and "what the [expletive] wrong with them. We torching [expletive] out here."

STEWART acknowledges that the Chicago Transit Authority van that was burned was in whole or in part owned or possessed by, or leased to, an institution or organization receiving federal financial assistance.

STEWART further acknowledges that the fire he and others started interfered with, and was intended to interfere with, the required Chicago Fire Department and the Chicago Police Department both of whom were then engaged in their official duties incident to and during the commission of a civil disorder, as "civil disorder" is defined in Title 18, United States Code, Section 232(1), and that the civil disorder obstructed, delayed, and adversely affected commerce and the movement of an article and commodity in commerce, as "commerce" is defined in Title 18, United States Code, Section 232(2), by resulting in the temporary closure of stores engaged in interstate commerce.

STEWART further acknowledges that the fire he set caused the total loss of the CTA vehicle.

## Maximum Statutory Penalties

7. Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

   a. Count One carries a maximum sentence of 5 years' imprisonment. Count One also carries a maximum fine of $250,000. Defendant further understands that with respect to Count One the judge also may impose a term of supervised release of not more than three years.

   b. Count Two carries a maximum sentence of 5 years' imprisonment. Count Two also carries a maximum fine of $250,000. Defendant further understands that with respect to Count Two, the judge also may impose a term of supervised release of not more than three years.

   c. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

   d. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

8. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

    a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

    b. **Offense Level Calculations.**

### Count One

i. The base offense level is 24, pursuant to Guideline §§ 2X1.1(a), 2X1.1(c)(1), and 2K1.4(a)(1)(A) because the offense created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly.

### Count Two

ii. The base offense level is 10, pursuant to Guideline §§ 1B1.2(a) and 2A2.4.

### Grouping

iii. Pursuant to § 3D1.2(d), Count One and Count Two are not grouped together and each offense is a separate group.

iv. Count One has an offense level of 24. That group is assigned one unit pursuant to Guideline § 3D1.4(a).

v. Count Two is 14 levels less serious than Count One. Therefore, pursuant to Guideline §3D1.4(c), that group is disregarded. Therefore, the total number of units is one.

vi. Pursuant to § 3D1.4, when the total number of units is one, there is no increase in the offense level. Therefore, the total offense level is 24.

### Acceptance of Responsibility

vii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and

if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

viii. In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c. **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 12 and defendant's criminal history category is V:

i. On or about October 11, 2013, defendant was convicted of residential burglary in the Circuit Court of Cook County and sentenced to four years' incarceration and 30 months' probation. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

ii. On or about December 9, 2014, defendant was convicted of possession of a stolen motor vehicle in the Circuit Court of Cook County and

sentenced to three years' incarceration. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

    iii. On or about November 29, 2017, defendant was convicted of possession of a stolen motor vehicle in the Circuit Court of Cook County and sentenced to six years' incarceration. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

    iv. On or about November 29, 2017, defendant was convicted of escape in the Circuit Court of Cook County and sentenced to two years' incarceration. Pursuant to Guideline § 4A1.1(a), defendant receives three criminal history points for this sentence.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 21 which, when combined with the anticipated criminal history category of V, results in an anticipated advisory sentencing guidelines range of 70 to 87 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation

and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11. Each party is free to recommend whatever sentence it deems appropriate.

12. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13. Regarding restitution, defendant agrees to pay restitution, arising from the relevant conduct set forth above, in an amount to be determined at sentencing, pursuant to Title 18, United States Code, Sections 3663(a)(3) and 3664.

14. Restitution shall be due immediately and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 21 CR 105.

19. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

   a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charges prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at

trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding information separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

c. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings

by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

22. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him,

and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to

disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

25. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

26. Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

## Conclusion

27. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

28. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of

its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

29. Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

30. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

31. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: August 8, 2022

JOHN R. LAUSCH, JR. by SME
United States Attorney

ALBERT BERRY III
Assistant U.S. Attorney

DENZAL STEWART
Defendant

ANTHONY W. HILL
Attorney for Defendant