UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|            Plaintiff | ) | |
| | ) | No. 21 CR 105 |
| vs. | ) | |
| | ) | Judge Gary Feinerman |
| DENZAL STEWART, | ) | |
|            Defendant | ) | |

### DEFENDANT'S SENTENCING POSITION PAPER

NOW COMES the Defendant, DENZAL STEWART, by and through his undersigned counsel, and respectfully submits this position paper on the sentencing factors contained in 18 USC 3553(a).

### OBJECTIONS AND CORRECTIONS TO THE PRESENTENCE REPORT

Mr. Dale's presentence investigation interview and report (PSR) was prepared while he was represented by a different attorney. However, undersigned counsel has reviewed the PSR with Mr. Dale and discussed the underlying facts and conclusions with him. Pursuant to that consultation, Mr. Dale makes the following comments on the PSR:

Page 6, Paragraph 8: "The fire to the CTA van resulted in the CTA needing to replace the vehicle, at a loss of $20,987." Mr. Stewart does not agree to this amount being imposed in restitution without additional evidence presented. The vehicle was certainly insured by the CTA. It was far from brand new, and there is no evidence of the actual value of the vehicle at the time it was destroyed.

Page 7, Paragraph 14: "The defendant knowingly created a substantial risk of death or serious bodily injury to another person other than a participant in the offense. As such, the base offense level is 24." While Mr. Stewart agreed to this calculation in his plea agreement, the

1

Court should make an independent determination as to whether the vehicle fire in this case actually created a substantial risk of death or serious bodily injury to anyone. It appears that the fire was extinguished without any substantial risk to civilians or first responders beyond what is inherent in such a fire.

<u>Page 11, Paragraph 42/ Page 13, Paragraph 45</u>: "While in custody at the Illinois Department of Corrections, the defendant incurred 45 disciplinary infractions between March 10, 2015, and May 16, 2018. Disciplinary infractions included: fighting, giving false information to an employee, unauthorized movement, violation of rules, failure to report, insolence, disobeying a direct order, possession of contraband or unauthorized property, theft, intimidation or threats, abuse of privileges, and damage or misuse of property." Neither the government nor probation has provided defense counsel with any details for these alleged infractions. Therefore, counsel is not in a position to address them and urges the court not to hold them against Mr. Stewart without further information. The burden of establishing any aggravating factors is on the government, and they have not met it here.

<u>Page 13, Paragraph 47</u>: Mr. Stewart's case may not be correctly called "open" at the time of the commission of this offense, and the two level addition should not apply. His case was on appeal. He had successfully vacated the judgment. He was released on an appeal bond. The State's Attorney's Office had requested review from the Illinois Supreme Court. Counsel believes that remains the status of the case today.

<u>Pages 14-16, Paragraphs 52-63</u>: Mr. Stewart does not contest the accuracy of these case records. However, since they were either dismissed or constitute juvenile history, none of them should be considered in aggravation at this sentencing.

Page 29, Paragraph 112: Mr. Stewart objects to the imposition of this amount of restitution without additional evidence.

## **CHARACTERISTICS AND HISTORY**

This crime took place during one of the most emotional and racially charged times in our country's history. George Floyd had been murdered by the police and many people took to the streets to protest institutional racism. Some people did so non-violently. Some, like Mr. Stewart, who had personal and direct experience on the receiving end of racism, were less constructive in their expression of frustration. Mr. Stewart recognizes that his choice to commit arson was not constructive. He regrets that he was open to looting and damaging property when the opportunity presented itself. While no excuse for his behavior, he was overcome by the frustration and resentment that had built in his community for years before the Floyd pressure valve blew it wide open. He is sincere in his remorse. The circumstances of this case are unique. There is no reason to think that there will be mass protests or political/ racial unrest and protests in this country again in the future. If so, Mr. Stewart will not be tempted to participate in any such protests.

The Presentence Report accurately conveys Mr. Stewart's background and upbringing, and Mr. Stewart has nothing substantive to add or correct to the report. Mr. Stewart wishes to highlight the following portions of the PSR:

Page 5, Paragraph 5: Mr. Stewart completed the non-residential substance use disorder treatment program titled "Strategies for Change" on February 22, 2022; he received certificates of completion of "Business Plan" and "Managing Credit Wisely" on March 10, 2022; and he received a certificate for Exceptional Work and Leadership in Food Service, dated January 18, 2022.

<u>Page 17, Paragraph 66</u>: Mr. Stewart "described his childhood as 'not terrible, but not good.' His family struggled to make ends meet, and they lived in shelters at various times throughout his childhood. He lived in two houses that were eventually foreclosed. Stewart never had stability…"

<u>Page 17, Paragraphs 67-69</u>: Mr. Stewart suffered from and witnesses first hand various forms of abuse as described in the PSR, including domestic and sexual abuse. The most stable person in his life, his grandmother/caretaker was alcholic. Family members including his mother were addicted to narcotics including cannabis and crack cocaine.

<u>Page 18, Paragraph 76</u>: "Upon release from custody, Stewart reported he would reside with his fiancée, Lisa Cunningham, at 8944 South Burley, Unit 2, in Chicago. His fiancée reported Stewart is a nice and loving person. She stated he has made mistakes, but he has also learned from the mistakes. He is the only person who has been there for her through difficult times. Cunningham reported she has a thyroid condition which requires surgery. She would like Stewart to be released from custody because she requires his assistance with the children in order to schedule her surgery. She reported her own mother has kidney disease and is unable to help her with childcare."

<u>Page 19, Paragraph 79, 83</u>: "Stewart reported he was diagnosed with bipolar disorder, attention deficit hyperactive disorder, anxiety and post-traumatic stress disorder." He has been suicidal in the past and hospitalized for mental health conditions. He is not currently on any medication.

<u>Pages 19-20, Paragraphs 84-88</u>: Mr. Stewart has a history of using and abusing cannabis, Xanax, and Ecstacy. He has not received any form of substance abuse treatment for over ten

years and would be amenable to participating in an appropriate program while on Mandatory Supervised Release.

In addition to the PSR, Mr. Stewart presents several letters of support from family and friends. Those letters make one thing clear: Mr. Stewart is all about his family. Mr. Stewart's mother, Rene Stewart, talks to Denzal every day on the phone. Exhibit A. She notes that Mr. Stewart has held down a consistent job, and is interested in getting his CDL license. Id. She points out that having children and missing out on his family while incarcerated has made Mr. Stewart "learn his lesson" and begin to change for the better. Id. Mr. Stewart's fiance, Lisa Cunningham, remains 100% invested in Mr. Stewart's success upon his release. Exhibit B. Ms. Cunningham emphasizes that Mr. Stewart is not just the biological father to one of her children; he is also the father to two children she has from a previous relationship. Id. Ms. Cunningham will keep Mr. Stewart on the right path when he is released. She needs him to help take care of the children given her medical conditions. She is proud of what he has accomplished even while incarcerated and hangs his certificates of completion in their home. Id. She is the positive influence that Mr. Stewart needs moving forward. In her letter, Norma Miller notes that Mr. Stewart's family is of preeminent importance to him and it "kills him everyday knowing that.Denzal ain't there with his family to create memories and cherish the time he has with them," and notes "He didn't get to see his child first steps or first words those are moments you can never get back." Exhibit C. Mr. Stewart has helped Ms. Miller through some tough times of her own and mentored her children in addition to his own. Id.

In summary, Mr. Stewart suffers from untreated mental illness and he got caught up in the emotions of the moment and set a fire. His criminal history overstates the need for additional incarceration in this case. Mr. Stewart has a strong release plan. He will live with Ms.

Cunningham, continue his education, and obtain his CDL. He will re-dedicate himself to his family and his extended network of family and friends. If the Court determines that a custodial sentence is appropriate, Mr. Stewart requests that he be committed to MSR with home confinement rather than receiving a sentence in the Bureau of Prisons.

## UNWARRANTED SENTENCING DISPARITY

Mr. Stewart was not alone in committing a criminal offense during the George Floyd protests. The Court should consider what sentences other similarly situated criminal defendants received for analogous conduct. Mr. Stewart's codefendant, Darion Lindsey is pending a competency evaluation. Codefendant Lamar Taylor pleaded guilty to the same charges as Mr. Stewart and is set for sentencing on November 29, 2022. Notably, Mr. Taylor's plea agreement specifies an advisory sentencing guideline range of 37-46 months. That range is lower than Mr. Stewart's (77-96 months) because Mr. Taylor is in criminal history category I. The criminal history of the two is not so substantial as to justify a sentence forty months longer for Mr. Stewart.

Counsel has conducted some review of similar cases nationally that suggest a lengthy sentence for Mr. Stewart would create unwarranted sentencing disparity. Some of these include:

A) USA vs. Timothy O'Donnell, 20 CR 260: The Defendant, wearing a joker mask, set a Chicago Police Department car on fire. He was sentenced to 34 months by Judge Wood.

B) USA vs. Jacob Fagundo, 21 CR 195: The Defendant used fireworks to set a Chicago Police Department car on fire. He received 3 years of probation from Judge Gettleman.

C) USA vs. Newbins, 20 CR 182 (D Utah): The defendants set a police car on fire.

6

        Latrol Newbins- 13 months BOP

        Lateesha Richards- 20 months BOP

        Jackson Patton - 24 months BOP

        Larry Williams - 24 months BOP

        Christopher Rojas - 13 months BOP

D)     USA vs. Frey, 20 CR 129 (D MN): Defendants set fire to a store in Minnesota and Frey advised his codefendants to lie about it to federal law enforcement.

        Samuel Frey - 27 months BOP

        McKenzy Dunn - 3 Years probation

## Formal Sentencing Request

Mr. Stewart has been in custody for a substantial amount of time, approximately 21 months. Most of that has been during the COVID epidemic, which has at times severely limited his ability to contact and receive visits from his family and friends. He requests a sentence of no more than 24 months, with any additional custodial time to be served on home confinement, with 3 years of mandatory supervised release.

## TERMS OF SUPERVISED RELEASE

Mr. Stewart objects to Discretionary Condition #7 (p.23) and asks that the condition be imposed as no consumption of excessive alcohol, as opposed to any alcohol.

Mr. Stewarts objects to Discretionary Condition 16, (p.24) to the extent that a probation officer visiting him at work or school could disrupt his ability to make a living. He does not object to visits at home or being required to submit pay stubs or transcripts as proof of employment or education enrollment.

7

Defendant has no other objections to the terms proposed, either as Mandatory Conditions or Discretionary Conditions of Supervised Release.

## **SENTENCING LOCATION RECOMMENDATION**

Should his sentence include further incarceration, Mr. Stewart requests that any sentence in the Bureau of Prisons be served as near to Chicago as possible.

Respectfully submitted,

Law Offices of Anthony W. Hill /s/ Anthony W. Hill
53 W. Jackson Blvd., Suite 660 Anthony W. Hill
Chicago IL 60604 Attorney for Defendant
312.882.8004

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Defendant's Sentencing Position Paper was served on November 14, 2022, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                         **/s/ Anthony W. Hill**
                                         **ANTHONY W. HILL,**
                                         Attorney at Law