UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 21 CR 105 |
| v. | ) | |
| | ) | The Honorable Gary S. Feinerman |
| DENZAL STEWART | ) | |

### **GOVERNMENT'S SENTENCING MEMORANDUM**

On May 30, 2020, thousands of people converged on the downtown Chicago area to protest the murder of George Floyd in Minneapolis. The majority of those individuals went downtown to peacefully voice their displeasure. Some, including defendant Denzal Stewart and his co-defendant Lamar Taylor, went downtown to steal and wreak havoc on the City of Chicago. On his way downtown, defendant, in the backseat of a vehicle, appeared in a Facebook Live video with his co-defendant, disguised with ski masks and plastic gloves, expressing their true intentions to try and "grab me some jewelry" and loot a jewelry store or anything that was open.



While downtown, Stewart and his co-defendants happened upon an unoccupied Chicago Transit Authority van. Stewart, using a lighter, attempted to and successfully set fire to a cloth or tarp that was in the back of the CTA van. After later adding a cardboard box into the front of the van where a codefendant had set a fire, the CTA van ignited and the fire spread, ultimately destroying the vehicle entirely. After starting the fire, Stewart filmed the fire from across the street yelling, "Torch that [expletive]," "There it go, first spark," and "what the [expletive] wrong with them. We torching [expletive] out here."

Considering the nature and circumstances of the offense, the defendant's background and characteristics, and the need to afford adequate deterrence and promote respect for the law, the government recommends a sentence of incarceration within the advisory sentencing Guidelines range of 77 to 96 months.

## I.     PRELIMINARY ADVISORY SENTENCING GUIDELINES RANGE

As a matter of process, the district court must properly calculate the Guidelines range, treat the Guidelines as advisory, consider the Section 3553(a) factors, and adequately explain the chosen sentence, including an explanation for any variance from the Guidelines range. *Gall v. United States*, 128 S. Ct. 586, 596-97 (2007).

The government agrees with the Probation Office's determination that the base offense level is 24, pursuant to Guideline § 2X1.1(a) and 2K1.4(a)(1), because the defendant knowingly created a substantial risk of death or serious bodily injury to another person other than a participant in the offense. PSR at ¶¶ 14, 27.

The government also agrees that the defendant has accepted responsibility in a timely fashion and receives a three-point reduction to his offense level pursuant to Guidelines §§ 3E1.1(a) and (b).  PSR at ¶¶ 31-32.

Finally, the government agrees with the Probation Office that defendant's criminal history points equal 14 and place him in Category VI. PSR at ¶¶ 41-48.

Pursuant to these calculations, the defendant's total offense level is 21, his criminal history category is VI, and his advisory Guidelines range of imprisonment is 77 to 96 months. PSR at ¶ 101. The government also agrees that the Court may impose a period of supervised release of up to 3 years.  PSR at ¶ 103.

## II. GOVERNMENT'S POSITION ON SENTENCING

The Sentencing Guidelines provide a starting point and initial benchmark for sentencing.  *Gall v. United States*, 552 U.S. 38, 49-50 (2007).  The "Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country." *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005); *see also United States v. Pulley*, 601 F.3d 660, 668 (7th Cir. 2010) (a "district court that sentences within the Guidelines necessarily gives weight and consideration to avoiding unwarranted disparities."). Although a sentence within the Guidelines is presumptively reasonable, *United States v. Cano-Rodriguez*, 552 F.3d 637, 639 (7th Cir. 2009), the court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining an appropriate sentence.

For the foregoing reasons, the government respectfully submits that a sentence within the Guidelines is warranted in this case and most appropriately reflects the

nature and circumstances of defendant's offense, his history and characteristics, the need to afford adequate deterrence, and promote respect for the law.

### A.    The Nature and Circumstances of Defendant's Crime

The defendant's crime was extremely serious. Unlike his proclamation in his sentencing memo that "he was overcome by the frustration and resentment that had built in his community for years," he used the cover of a defining moment in American history to go out and cause mayhem and commit crimes in Chicago. The ill intent of Stewart and his co-defendant Lamar Taylor is shown by the video Taylor posted to Facebook while he and Stewart were on their way to downtown Chicago on May 30, 2020.

Throughout the video, codefendant Taylor and Stewart revealed their true reasons for going downtown and it was not to legitimately protest. Early in the video, codefendant Taylor stated, "We going down here to get busy, like everybody else," while Stewart was in the back stating, "Yeah." Codefendant Taylor followed up saying, "Cuz we about to go down here and get buckwild like everyone else." Stewart replied, "You hear me." Codefendant Taylor stated, "I'm tryin' to hit a lick. No justice, no peace." Stewart replied, "You hear me."

While downtown, Stewart and his codefendants happened upon a parked, unattended CTA van in the middle of State Street. Though things had not yet escalated, Stewart and his codefendants decided to set fire to the van.



STEWART                                    Small Flame

In the picture above Stewart is lighting a fire in the back of the CTA van.



STEWART            TAYLOR            Fire

In the picture above, Taylor is inside the front passenger compartment of the van. While in there, a flash of fire is seen. Stewart is standing behind Taylor watching him.



STEWART                                        TAYLOR

The above picture comes after Taylor was in the front passenger compartment of the van. After the fire is seen (picture above this one), Taylor exits the van and runs around the van, closing all the doors.



STEWART

In the picture above, Stewart is about to put a cardboard box, that he found on the ground, into the front passenger compartment of the CTA van, ostensibly to assist the growth of the fire.





The two pictures above show the CTA van on fire. The first picture is when the flames first appeared. The second picture shows people walking by the van on fire.



The picture above is after approximately eight minutes of the CTA van burning. Firemen came to the scene to put out the fire. The CTA van was destroyed.

While the van was on fire, small explosions and sparks were seen, exposing the firemen and other individuals in the area to danger. Stewart's actions put scores of people at risk, including police officers, firefighters, protesters, and bystanders; he interfered with law enforcement officers trying to protect the public at a time when their services were critical; he caused thousands of dollars in damages; and his actions served as some of the images and stories that tarnished this city.

Thankfully, no one was injured as a result of the fire the defendant and his codefendants set. Defendant knew what he was doing was dangerous and could hurt others. Despite the obvious risks his actions posed to others, defendant did it anyway. Only by sheer luck was no one injured, but it could have been very different.

9

Accordingly, the nature and circumstances of defendant's offense warrant a sentence of imprisonment within the guideline range of 77 to 96 months.

## B.  Defendant's History and Characteristics

Defendant is a 26-year-old father of five. ¶¶ 65, 70-71. Defendant also reported a history of mental illness and substance abuse. ¶¶ 79-89. His criminal history ranges from residential burglary at the age of 17 to two criminal possession of stolen vehicles (one at 18), and escape conviction at age 20. ¶¶ 41-45. Due to his criminal history and because defendant committed this offense while he was on parole, he has a criminal history category of VI. While he was incarcerated for his previous convictions, the Illinois Department of Corrections documented 45 disciplinary infractions from March 10, 2015, through May 16, 2018 and 52 infractions from January 11, 2018 through May 14, 2019.

At the age of 26 defendant is already in the worst criminal history category in the federal system. He has accumulated five adult convictions and an additional 12 arrests (starting at age 13). Defendant's history in the criminal justice system is an indicator that his behavior will be difficult to change. Accordingly, defendant's history and characteristics support a sentence within the advisory guidelines range of 77 to 96 months' incarceration.

## C.  Sentencing Disparities

In his sentencing memo, defendant compared his case to others that have been prosecuted throughout the nation. However, defendant only looked at the sentence imposed on each individual and came to the conclusion that a sentence within the guideline range in this case would cause an unwarranted sentencing disparity. That

10

is simply not the case. A closer look at those cases through the sentencing memorandums filed by the parties show that each situation was different from the case at hand and a guideline sentence is appropriate in this instance.

Initially, it should be noted that none of the individuals listed in defendant's sentencing memorandum have the significant criminal history that this defendant has. He is a criminal history VI. Most of the individuals cited had no or a low criminal history.

Second, as is required, the sentences for each individual were viewed through its own lens and was personally structured towards the needs for each defendant and situation. That is what the court should do here, as a guideline sentence is warranted in this situation. A brief discussion of those sentences is below.

**United States v. Timothy O'Donnell, Northern District of Illinois, *20 CR 260***

Timothy O'Donnell's case is distinguishable. As was outlined in Stewart's sentencing memo, Timothy O'Donnell was sentenced to 34 months' incarceration after pleading guilty to a one count information charging him with civil disorder. Though defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy to commit arson, a separate charge carrying an additional five-year maximum sentence.

Additionally, O'Donnell's guidelines were 46 to 57 months' incarceration, whereas Stewart's guidelines are 77 to 96 months. It should also be noted that O'Donnell had significant mental health issues that were outlined in court on various

occasions (detention and sentencing hearings) and that was taken into consideration by the judge in her final sentence.

## United States v. Jacob Fagundo, Northern District of Illinois, *21 CR 195*

Jacob Fagundo's case is distinguishable. As was outlined in Stewart's sentencing memo, Jacob Fagundo was sentenced to 3 years' probation after pleading guilty to a one count information charging him with civil disorder. Though defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy to commit arson, a separate charge carrying an additional five-year maximum sentence.

After the arsons and violence following the death of George Floyd law enforcement in the Chicago area sought to find individuals responsible for those acts. In an attempt to find the individuals, law enforcement broadcast pictures of the offenders on the internet and in newscasts. Fagundo, unlike the defendant, turned himself into law enforcement once he saw his picture on broadcasts. Fagundo also availed himself to the government for a proffer and had no criminal history at all. His guidelines were 8 to 14 months' incarceration. Stewart, on the other hand, is in the worst criminal history category in the federal system and his guidelines are 77 to 96 months.

## US v. Latrol Newbins, District of Utah, *20 CR 182*

Latrol Newbins's case is distinguishable. As was outlined in Stewart's sentencing memo, Latrol Newbins was sentenced to 13 months' incarceration after pleading guilty to a one count information charging him with civil disorder. Though

defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy to commit arson, a separate charge carrying a five-year maximum sentence.

It should also be noted that the guideline range for Newbins was 27 to 33 months' incarceration, whereas Stewart's guidelines range is 77 to 96 months' incarceration. Additionally, as was pointed out in his sentencing memo, Newbins went to protest in peace. He "helped lead the crowd, calling for justice and highlighting that this march was peaceful." While talking about a protest the turned violent and destructive he said, "'Saturday was a mockery'" and "'We're here for peace.'" *US v. Newbins*, 20 CR 182 Dkt. 328. This is opposite of why Stewart went downtown. He was not there to protest. He went to loot and cause mayhem, as was outlined in the Facebook videos.

### Lateesha Richards

Lateesha Richards's case is distinguishable. As was outlined in Stewart's sentencing memo, Lateesha Richards was sentenced to 20 months' incarceration after pleading guilty to a one count information charging her with civil disorder. Though defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy to commit arson, a separate charge carrying an additional five-year maximum sentence.

It should also be noted that the guideline range for Richards was 37 to 46 or 27 to 33 months' incarceration (depending on the guidelines adopted by the court), whereas Stewart's guidelines range is 77 to 96 months. Additionally, as was pointed out in her sentencing memo, Richards did not set a fire. She was accused of throwing

13

a bat and vandalizing an overturned vehicle. Additionally, it was noted that video showed her peacefully speaking with the police. *US v. Newbins*, 20 CR 129, Dkt. 274. Here, Stewart set a fire to a CTA van, an act way more dangerous that anything for which Richards was accused.

### Jackson Patton

Jackson Patton's case is distinguishable. As was outlined in Stewart's sentencing memo, Jackson Patton was sentenced to 24 months' incarceration after pleading guilty to a one count information charging him with civil disorder. Though defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy to commit arson, a separate charge carrying an additional five-year maximum sentence.

It should also be noted that the guideline range for Patton was 37 to 46 months' incarceration, whereas Stewart's guidelines range is 77 to 96 months' incarceration. Patton was accused of attempting to recruit others to join in the riots and stomping on police cars and intimidating individuals. *US v. Newbins*, 20 CR 182, Dkt. 284. Here, as has been previously stated, Stewart set fire to a CTA van in an effort to start a riot.

### Christopher Rojas

Christopher Rojas's case is distinguishable. As was outlined in Stewart's sentencing memo, Christopher Rojas was sentenced to 13 months' incarceration after pleading guilty to a one count information charging him with civil disorder. Though defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy

to commit arson, a separate charge carrying an additional five-year maximum sentence.

It should also be noted that the guideline range for Rojas was 21 to 27 months' incarceration, whereas Stewart's guidelines range is 77 to 96 months. Rojas had no criminal history prior to his engagement in his offense, whereas Stewart has a criminal history of VI.

### Larry Williams

Larry Williams's case is distinguishable. As was outlined in Stewart's sentencing memo, Larry Williams was sentenced to 24 months' incarceration, within his guideline range of 21 to 27 months' incarceration, after pleading guilty to a one count information charging him with civil disorder. Though defendant in this case has pled to civil disorder, he has also pled guilty to conspiracy to commit arson, a separate charge carrying an additional five-year maximum sentence. Williams had no criminal history prior to his engagement in his offense, whereas Stewart has a criminal history of VI.

### US v. Samuel Frey, District of Minnesota, *20 CR 129*

Samuel Frey's case is distinguishable. As was outlined in Stewart's sentencing memo, Samuel Frey was sentenced to 27 months' incarceration (along with more than $33,000 in restitution) after pleading guilty to conspiracy to commit arson. Though defendant in this case has pled to conspiracy to commit arson, he has also pled guilty to civil disorder, a separate charge carrying an additional five-year maximum sentence.

It should also be noted that the guideline range for Frey was 37 to 46 months' incarceration, whereas Stewart's guidelines range is 77 to 96 months. Frey had no criminal history prior to his engagement in his offense, whereas Stewart has a criminal history of VI. Though Frey was accused of setting a fire in the store, the fire self-extinguished and did not destroy the business. *US v. Frey*, 20 CR 129, Dkt. 114.

**McKenzy Dunn**

McKenzy Dunn's case is distinguishable. As was outlined in Stewart's sentencing memo, McKenzy Dunn was sentenced to three years' probation after pleading guilty to conspiracy to commit arson. Though defendant in this case has pled to conspiracy to commit arson, he has also pled guilty to civil disorder, a separate charge carrying an additional five-year maximum sentence.

It should also be noted that the guideline range for Dunn was 24 to 30 months' incarceration, whereas Stewart's guidelines range is 77 to 96 months. The government, in its sentencing memo, requested a below guidelines sentence of 6 to 12 months' incarceration. Dunn had no criminal history prior to her engagement in this offense, whereas Stewart has a criminal history of VI. Though Dunn conspired with others to commit the arson, her behavior consisted of asking for a lighter and pouring hand sanitizer over a fire. *US v. Frey*, 20 CR 129, Dkt. 86. Behavior that is far less egregious than Stewart's behavior here.

Accordingly, a sentence within the guideline range of 77 to 96 months is warranted and would not be disparate to other sentences imposed.

**D.     The Need to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Afford Adequate Deterrence**

Defendant's behavior and videos on Facebook reveal a person that had no interest in seeking justice for the murder of George Floyd. In one of the most racially charged moments in the history of our country, the defendant went to downtown Chicago to look for opportunities for himself. He used a tragedy for his own benefit and enjoyment, trying to take the opportunity to capitalize on the pain of others. In doing so, he set fire to a CTA van in an effort to cause mayhem. He said as much in his video recording after he set the fire when he stated, ""There it go, first spark."

It bears repeating just how turbulent that evening and weekend were in Chicago. It was the most violent and deadly weekend in over thirty years, with 18 murders in a 24-hour span, and 85 people shot and 24 killed over the three-day weekend. *See* https://www.bbc.com/news/world-us-canada-52984535 (last visited November 15, 2022). That is horrific. While defendant is not responsible for all that criminal conduct, defendant contributed to the lawlessness and violent mindset in the city.  His conduct also pulled some of the resources of the city away from that violence to attend to the chaos he created in the Loop. This case calls out for a sentence to promote respect for the law.

There is also a need for a sentence that sends a message to the public that chaos and destruction will be met with severe consequences. Not every participant in criminal conduct during a riot or civil unrest will be identified. But it is imperative that those who are receive significant punishment for their actions.

17

### III.    GOVERNMENT'S POSITION ON SUPERVISED RELEASE

The government has no objections to the conditions of supervised release recommended by the Probation Office, and the government submits that a period of supervised release of three years is appropriate.  The government also agrees with the special conditions and discretionary conditions of supervised release, as recommended by the Probation Office.

### IV.    CONCLUSION

For the foregoing reasons, the government respectfully submits that a Guidelines sentence is appropriate here, and requests that the Court sentence defendant Denzal Stewart to a term of imprisonment within the Guideline range of 77 to 96 months, followed by three years of supervised release.

Date: November 16, 2022          Respectfully submitted,

                                 JOHN R. LAUSCH, JR.
                                 United States Attorney

                         By:     */s/ Albert Berry III*
                                 ALBERT BERRY III
                                 Assistant United States Attorney
                                 United States Attorney's Office
                                 219 South Dearborn Street, Fifth Floor
                                 Chicago, Illinois 60604
                                 (312) 886-7855