UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | No. 21 CR 105-3 |
| | ) | Honorable Judge Blakey |
| DARION LINDSEY | ) | |
|     Defendant | ) | |

DARION LINDSEY'S POSITION PAPER AS TO SENTENCING

NOW COMES the defendant, DARION LINDSEY, by his attorney, Amir Mohabbat, and submits this sentencing memorandum, and respectfully requests, pursuant to Rule 32 of the Federal Rules of Criminal Procedure, and the Supreme Court's opinions in *Gall v. United States*, 128 S. Ct. 586 (2007) and *Kimbrough v. United States*, 128 S.Ct 558 (2007), that this court impose a below guidelines sentence of time served, 2 years of supervised release, no fine, $20,987.00 in restitution, and a $200 special assessment -- a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. Section 3553(a)(2). In support of this sentencing request, Mr. Lindsey offers the below and this brief is submitted with Mr. Lindsey accepting full responsibility for his actions in the counts of conviction.

I. FACTUAL BACKGROUND-Family and personal.

Mr. Lindsey's PSIR, along with any allocution at sentencing will serve as Mr. Lindsey's Version of the Offense and to set the background against which Mr. Lindsey and his actions may be viewed. Probation Officer Boudy, in the PSIR, informs the Court of the offense and the circumstances of Mr. Lindsey's life.

II. EMPHASIS TO PRESENTENCE INVESTIGATION REPORT

EMPHASIS – Paragraphs 4, 77 – 81: Mr. Lindsey began to abuse drugs as a young boy and he now suffers from various emotional and mental health issues that he is working to overcome.

EMPHASIS – Paragraphs 68 - 72: Mr. Lindsey was one of 9 children and was shuffled between states and homes, ultimately ending up in DCFS custody and 5 different group homes. This history undoubtedly plagues Mr. Lindsey's emotional health as he continues to try to overcome his difficult childhood.

III. OFFENSE LEVEL COMPUTATION

**Base Offense Level**: Mr. Lindsey agrees with the PSIR's calculation. The criminal history score is higher than contemplated in the Plea Agreement.

IV. CRIMINAL HISTORY, OFFENDER CHARACTERSITICS, 18 U.S.C. §3553(a) FACTORS and MITIGATION

The Supreme Court and Congress require the district court to sentence in accordance with 18 U.S.C. § 3553(a). Rita v. United States, 511 U.S. 1181 (2007)(explaining that district judges are required "to filter the Guidelines' general advice through 3553(a)'s list of factors"); Booker, 543 U.S. at 259-60; see also United States v. Wachowiak, 2007 U.S. App. LEXIS 18234, at *9-10 (7th Cir. Aug. 1, 2007) (holding that after Booker, the Guidelines are advisory, but application of § 3553(a) is mandatory). The Supreme Court held in Rita that sentencing judges are required "to 'impose a sentence sufficient, but not greater than necessary, to comply with' the basic aims of sentencing" in § 3553(a). Rita, 127 F.3d at 2463. This is known as 3553(a)'s parsimony provision, and it serves "as the guidepost for sentencing decisions post-Booker." United States v. Ferguson, 4562 F.3d 660, 667 (6th Cir. 2006).

A. 18 U.S.C. §3553(a) factors:

(1) The nature and circumstances of the offense and the history and characteristics of the

defendant;

(2) The need for the sentence imposed:

    (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (b) to afford adequate deterrence to criminal conduct;

    (c) to protect the public from further crimes of the defendant; and

    (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) The kinds of sentences available;

(4) The advisory guideline range;

(5) Any pertinent policy statements issued by the Sentencing Commission;

(6) The need to avoid unwarranted sentence disparities; and

(7) The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering the above factors, a sentence should be imposed that is sufficient, but not greater than necessary to comply with the purposes of sentencing set forth in §3553(a)(2).

B. Specifics of Case

1. Nature of Offense

Please see the discussion in the PSIR and *supra* that Mr. Lindsey adopts herein. Mr. Lindsey was enraged by the death of George Floyd and engaged in the offense conduct as a reaction. He has learned to regulate his emotions and will not recidivate.

As the Supreme Court explained in *Koon v. United States*, 518 U.S. 81 (1996), there is a tradition in this country of crafting a sentence based on each individual to come before the court

with that person's unique characteristics in mind: "[it] has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon*, 518 U.S. at 113. The basis of this tradition is the notion that the "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949); see also *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender.") Thus, this court should take into account much more than the offense and the government's allegations against Mr. Lindsey when fashioning a unique sentence that is reasonable and appropriate to Mr. Lindsey.

2. Characteristics of the Defendant

As stated above and in the PSIR, Mr. Lindsey grew up as a neglected child with access to drugs and gangs. No doubt, this court is very familiar with backgrounds as painful as Mr. Lindsey's. Mr. Lindsey acknowledges he has contributed to the problems that plague Chicago and its neighboring communities and he is very sorry. He feels that by answering for his crime via guilty plea he has begun the road to self-improvement and therefore also community improvement. Mr. Lindsey has a thoughtful and realistic plan to make sure he leads a law abiding life going forward: living with his mother and working lawfully to support his 2 very young children. This honest, reflective and genuine repentance supports this Court imposing a sentence below the advisory guideline range. *U.S. v. Rutherford*, 323 F.Supp.2d 911, 914 (E.D. Wisc. 2004) "truly repentant defendants to earn reductions in their sentences based on a

demonstrated commitment to repair and rebuild their lives," citing *U.S. v. Sally*, 116 F.3d 76, 81 (3rd Cir. 1997). Like when he left a gang, Mr. Lindsey has now also left crime.

3. Purposes of Sentencing and Needs of the Public and Consideration of the Guidelines

The sentence prayed for reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. It also affords adequate deterrence to criminal conduct, protecting the public from the defendant as Mr. Lindsey would be monitored closely on supervised release. Moreover, drug counseling would ensure Mr. Lindsey does not recidivate. Mr. Lindsey has been locked up since his arrest in 2020. The sentence sought is appropriate when considering the guidelines are a starting point and then filtered through §3553(a).

Moreover, Mr. Lindsey was incarcerated throughout most of the entirety of the COVID-19 pandemic. He was subjected to 23-hour per day lockdowns for years as well as the deprivation of access to family and loved ones. The pandemic and the BOP's response to it, "made the experience of being incarcerated in jail much harder and more scary than could have ever been anticipated or intended." *U.S. v. Robles*, 553 F. Supp.3d 172 (S.D. N.Y 2021). Courts around the nation have accounted for the quality of harsh time defendants have served due to the pandemic in determining appropriate sentences. Beyond COVID-19, it has been almost 4 years since Mr. Lindsey has stood outside and breathed fresh air. It has been almost 4 years since Mr. Lindsey has stood outside and felt sunlight on his skin.

4.     The Need to Provide Restitution to any Victims of the Offense

Mr. Lindsey agrees to make $20,987.00 in restitution which he plans to pay from his employment wages.

V. IMPOSITION OF NO FINE

Mr. Lindsey asks this Court to find he is unable to pay a fine and to impose no fine.

Mr. Lindsey is aware of the $200 special assessment and will pay it.

## VI. SUPERVISED RELEASE

Mr. Lindsey has no objection to any of the proposed terms of supervised release.

## VII. COLLATERAL CONSEQUENCES

It is asked that this court not enter an order that would deprive Mr. Lindsey of any rights. Mr. Lindsey cites to *U.S. v. Bannister*, 786 F.Supp.2d 617, 653-654 (E.D.N.Y., 2011) for support that as a convicted federal felon, he will suffer the loss of thousands of rights and opportunities to engage in otherwise lawful actions to better himself, his family, and his quality of life. It is asked that this court not order that Mr. Lindsey be ineligible for federal benefits. Mr. Lindsey will suffer vast collateral consequences, and a sentence that includes imprisonment beyond what is sought would be far greater than necessary to achieve the aims of sentencing.

## VIII. CONCLUSION

WHEREFORE, for the reasons stated above, Mr. Lindsey prays that this court impose a sentence of time served in prison, followed by 2 years of supervised release, $20,987.00 in restitution, and the imposition of a $200 special assessment.

Dated this 11th day of April, 2024.

Respectfully submitted,

/s/ Amir Mohabbat

Amir Mohabbat
The Chicagoland & Suburban Law Firm, P.C.
248 S. Marion St., #104
Oak Park, Illinois 60302


Attorney for Defendant.

6

PROOF OF SERVICE

I, Amir Mohabbat, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

April 5, 2024

/s/ Amir Mohabbat